377 P.2d 646

The STATE of Utah, Plaintiff and Respondent,

v.

Coy RINGO, Defendant and Appellant.

No. 9712.

Supreme Court of Utah.

Jan. 16, 1963.

Dwight L. King, Salt Lake City, for appellant.

A. Pratt Kesler, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice.

Defendant appeals from a conviction for assault upon a fellow convict with malice aforethought in violation of 76–7–12, U.C.A. 1953. His sole contention upon appeal is that the oral admissions or confession obtained from him, and introduced at the trial, were obtained in violation of his state constitutional right against being compelled to give evidence against himself.[1]

1. Article I, Sec. 12, Utah Constitution.

The record discloses that the defendant, while confined to a maximum security cell in the Utah State Prison, gained access to an area known as the "Inmate Security Area" where he engaged in a physical affray with one Ollerdisse, a fellow prisoner. The incident was witnessed by guards who returned the two convicts to their respective cells and subjected them to a physical examination. It was discovered that Ollerdisse had two puncture-type wounds, one in his rib cage and one in his abdomen. The latter wound required surgical repair.

Two days later, the defendant was taken to the office of the Deputy Warden where he was interrogated for approximately 45 minutes to an hour. During the course of the interrogation he admitted to having stabbed Ollerdisse with a laundry pin.

The interrogation was conducted by Ferris D. Andrus of the Salt Lake County Sheriff's Office in the presence of Deputy Warden Fitzgerald, Ernest Wright, Executive Secretary of the Board of Corrections, and Lieutenant Jooston of the prison staff.

The record discloses, and the defendant does not contend otherwise, that no threats or promises were made or force used during the interrogation. However, it also appears from the record, and is conceded by the State, that the defendant was not advised of his right to remain silent or of his right to have counsel or that his statements might be used as evidence against him.

Andrus and Wright both testified concerning the admissions or confession made by the defendant during the course of the interrogation. At one point the defendant's trial counsel requested an out-of-court hearing as to the voluntariness of defendant's statements. However, he later withdrew this request. Trial counsel cross-examined both of these witnesses and then proceeded with the defense. After the defense rested, defendant's trial counsel moved to strike the testimony of Andrus and Wright upon the ground that defendant's statements had been involuntarily made. This motion was denied. No instructions on the question of voluntariness were requested nor exceptions taken to the failure of the court to submit the matter to the jury. No issue is raised on this appeal concerning the lower court's action in this regard.

It is the defendant's contention that he was under duress—that "because of the force, apparent and actual, that the Deputy Warden and the other officials had over him, he was compelled to answer all questions that were submitted to him."

In support of this contention the defendant cites United States v. Kallas,[2] for the proposition that before a confession obtained from one in custody may be intro-

2. 272 F. 742 (D.C.Wash.1921).

duced in evidence it must be shown that he was advised of his right to refuse to answer the questions propounded by the officers, and that any answers he chose to make might be used as evidence against him. If this federal district court case is authority for such a proposition, we must respectfully express our disagreement with it.

The basic question to be determined is whether the confession or admission was voluntary. If it is, then it should be admitted into evidence, otherwise not. That the defendant was in custody at the time he made the statements and that he was not advised of his rights or warned that the statements might be used as evidence against him are all factors to be taken into consideration in determining the question of voluntariness. This court in State v. Masato Karumai,[3] speaking through Wade, District Judge, stated:

"But even assuming this statement were a confession and not merely an admission—as above concluded—still there was no showing that it was involuntarily made. The fact that the statement was made to an officer while under arrest does not make it involuntary. [Citing cases.] Nor is the fact that no warning was given defendant that what he said might be used against him conclusive, but all these facts and the circumstances existing at the time should be considered in determining the voluntary or involuntary character of the statement. [Citing cases.] The court, therefore, did not err in receiving this testimony in evidence."

From the record it clearly appears that the defendant's contention is without merit. He exhibited no reluctance to speak of the crime, on the contrary, when he first entered the Deputy Warden's office he invited questions by asking, "Well, what are you going to ask me?"

With regard to the failure to advise defendant of his rights, the record discloses the following from the cross-examination of Officer Andrus:

"Q. And did you at any time inform Mr. Ringo he had a right to be represented by counsel?

"A. No, sir, I didn't have a chance to.

"Q. But you didn't?

"A. I just asked him what happened and he started talking."

It thus appears from the record that defendant's statements were voluntarily made and none of his constitutional rights violated.

Affirmed.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

3. 101 Utah 592, 126 P.2d 1047 (1942).